IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Donna J. Seymour,                :

    Plaintiff,              :

  v.                             :       Case No.  2:09-cv-774

Michael J. Astrue,               :       JUDGE HOLSCHUH
Commissioner of Social Security,

    Defendant.              :

### REPORT AND RECOMMENDATION

#### I. Introduction

Plaintiff, Donna J. Seymour, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. That application, which was filed on January 26, 2006, alleged that plaintiff became disabled on December 1, 1999.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on December 17, 2008. In a decision dated February 3, 2009, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on July 22, 2009.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on November 6, 2009. Plaintiff filed a statement of specific errors on December 1, 2009, to which the Commissioner responded on March 3, 2010. Plaintiff filed a reply on March 22, 2010, and the matter is now ripe for decision.

#### II. Plaintiff's Testimony

Plaintiff was 43 years old at the time of the

administrative hearing.  At that time, she lived with her fiancé
and her three young grandchildren and helped take care of them.
(Tr. 274).  She left school during her seventh grade year.  (Tr.
275).  She has no trouble reading and writing.  Id.

Plaintiff last worked in 2000 at Wal-Mart as a pet
department employee.  She left that job due to injuries sustained
in a car accident.  (Tr. 275-76).  Before that, she worked as a
cook in a bowling alley, at a dry cleaners, and at a department
store.  (Tr. 276-77).

The car accident affected her neck and back.  She previously
had problems with her knees.  (Tr. 278-79).  She had back surgery
but it did not help.  (Tr. 279-80).  She has also had knee
surgery.  (Tr. 280).  These problems affect her ability to stand
or sit for any length of time.  (Tr. 281).

In a typical day, plaintiff does some household chores,
feeds her pets, and helps with the cooking.  (Tr. 282).  She does
not sleep during the day but has trouble sleeping at night.  (Tr.
282-83).  She can do crossword puzzles and she watches
television.  (Tr. 283).  Her back and knees, and the inability to
sit or stand, are her most limiting problems.  (Tr. 283-84).

### III.   The Medical Records

The pertinent medical records show the following.  Because
neither of plaintiff's assignments of error take specific issue
with the way in which the Commissioner interpreted the medical
issues, the Court will only briefly summarize them.

An MRI of plaintiff's lumbosacral spine was done on April 9,
2003.  It showed degeneration at the L5-S1 area and dessicative
changes through the three lower lumbar areas.  Some bulging
existed at L4-5 and there was a minute central disc herniation at
L5-S1.  (Tr. 129).  Spinal stenosis was seen on a subsequent MRI
study.  (Tr. 133).  An emergency room note dated December 17,
2004 states that plaintiff was scheduled for back surgery on

January 6, 2005. (Tr. 135). However, the surgery did not take place until over a year later, at which time plaintiff underwent an instrumented posterior spinal fusion L4 to S1. (Tr. 152-53). On June 14, 2006, she had a revision of that surgery after having experienced an onset of right leg radicular pain and numbness. The surgery included removal of a pedicle screw and connecting rod and the placement of a new connecting rod. (Tr. 238-39).

Plaintiff visited the emergency room on March 27, 2005 with a complaint of left knee pain. She was given medication at that time and advised to follow up with her doctor. (Tr. 139-41). A subsequent MRI study showed meniscal tears as well as a large joint effusion. (Tr. 146). She had arthroscopic knee surgery on May 5, 2005. (Tr. 147-48). She reinjured her knee in 2007 and was not aided by physical therapy. (Tr. 241-42). Consequently, she had a total left knee replacement on February 4, 2008. (Tr. 248-49). She continued to have right knee pain and had a diagnosis of bone-on-bone arthritis on September 3, 2008 after undergoing arthroscopic surgery on that knee in May, 2008. (Tr. 251, 254-55).

Finally, plaintiff was evaluated by Dr. Tanley, a psychologist, on March 31, 2006. He noted that a sense of helplessness pervaded her speech. Her intellectual functioning was judged to be in the low average range. She reported depression and anxiety but Dr. Tanley did not observe any signs of anxiety during the interview. He diagnosed a mild depressive disorder and rated her GAF at 70. He found only a mild impairment in her ability to deal with the stress and pressure of daily work activity. (Tr. 160-62). A state agency reviewer concluded that plaintiff's depression was not a severe disorder. (Tr. 166-70).

IV. The Expert Testimony

A medical expert, Dr. Kendrick, testified at the

administrative hearing. He stated that the records documented impairments including lumbar spondylosis from L4 to S1 with a fusion and a second surgery to remove some hardware, a total knee replacement on the left side, advanced osteoarthritis in her right knee, asthma, and depression. (Tr. 295). He thought plaintiff would be limited to sedentary work and that she could do that type of work even with her back pain. (Tr. 296). She could sit 45 minutes at a time for six hours in a day, and stand or walk for half an hour at a time for at least two hours a day. (Tr. 296-97). She could rarely use foot controls, could not kneel, crawl or squat, and could only occasionally bend or stoop. (Tr. 297). She could also not work in environments with concentrations of fumes or dust or extremes of temperature or humidity. (Tr. 298).

A vocational expert, Dr. Klein, also testified at the administrative hearing. He characterized plaintiff's past work as a cashier as light and unskilled, and as a stock clerk as medium and unskilled. Any other jobs were also either light or medium. (Tr. 299). If she were limited as described by Dr. Kendrick, she could not do any of those jobs. Id. If she had not only those restrictions but could not work around dangerous machinery or operate equipment and could do only simple repetitive tasks in a low-paced environment, she could still perform half of the sedentary jobs available, including order clerk, packer, and inspector. (Tr. 299-300). If plaintiff's testimony were fully credited, however, she could not work. (Tr. 300).

V.     The Administrative Decision

In the administrative decision, the Commissioner found that plaintiff suffered from severe impairments including degenerative disc disease of the lumbosacral spine, status post fusion and revision, osteoarthritis of the knees with meniscal tears, status

post surgeries including left knee replacement, obesity, asthma, hypertension, tobacco dependence, and depression. The Commissioner further found that plaintiff had the physical limitations described by Dr. Kendrick in his testimony and the additional restrictions which were included in the question posed to the vocational expert. With these restrictions, although plaintiff could not perform her past work, she could do a number of unskilled sedentary jobs, including the ones identified by the vocational expert. As a result, she was found not to be under a disability and not entitled to benefits.

## VI. Legal Analysis

In her statement of errors, plaintiff raises two issues. First, she argues that the Commissioner improperly accepted the unsupported testimony of the vocational expert, Dr. Klein. Second, she argues that the Commissioner improperly failed to take into account her need for a sit/stand option. These contentions are evaluated under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into

account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In plaintiff's first assignment of error, she notes that the vocational expert identified only three jobs that were representative of the type of sedentary work she could do. However, she argues that two of the three, packer and inspector, cannot, according to the Dictionary of Occupational Titles, be performed at the sedentary level. The only remaining job is order clerk. The vocational expert identified only 250 such positions, which, according to plaintiff, is not a significant number. Thus, she asserts that the case should be remanded for the taking of further vocational evidence.

This argument is unavailing. The Court's review of an administrative decision rendered in a social security case is ordinarily limited to the face of the administrative record. Here, the vocational expert specifically testified to the existence of both 6,000 sedentary jobs within the regional economy, and three specific jobs which were representative of such work. The Commissioner was entitled to rely on this testimony in the absence of any evidence to the contrary. See, e.g., Beinlich v. Commissioner of Social Security, 2008 WL 4185972, *3 (S.D. Ohio September 4, 2008), citing Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 374 (6th Cir. March 1, 2006). Plaintiff's statement of errors does not raise the issue of whether the Commissioner failed to insure that

the vocational expert's testimony was consistent with the DOT, but only that the expert's testimony should not have been considered reliable in the face of her assertion that the DOT does not describe any sedentary packer or inspector jobs. The force of this argument is undercut by the Commissioner's citation, at page 9 of the memorandum in opposition, to several sedentary unskilled inspector jobs described by the DOT. In light of this evidence, the Court could well find that any error in failing to ask about consistency with the DOT was harmless. See, e.g., Bailey v. Astrue, 2010 WL 749729 (S.D. Ohio March 1, 2010). Finally, the numbers provided by the vocational expert even for the order clerk job, which included not only 250 such jobs in the regional economy but 15,000 in the state economy and 500,000 in the national economy, are significant numbers. See, e.g., Stewart v. Sullivan, 904 F.2d 708, 1990 WL 75248, *4 (6th Cir. 1990) (unreported) ("Certainly, 400,000 jobs, with no indication of gross concentration in a few areas, is a significant number of jobs in the national economy"). For all these reasons, plaintiff's first assignment of error lacks merit.

Plaintiff's second assignment of error asserts that the Commissioner incorrectly accepted the vocational expert's testimony that the jobs which he identified could be performed by someone with the type of sit-stand option described by Dr. Kendrick. In particular, plaintiff asserts that sedentary jobs are not usually structured to allow for a sit-stand option and that "the conclusion of the ALJ that the claimant can perform the sedentary, unskilled work of an order clerk is impossible given the parameters of SSR 83-12 and the relevant case law in the Sixth Circuit." Plaintiff's Statement of Specific Errors, Doc. #11, at 15. In her reply, she reiterates the argument that the Court of Appeals, in Wages v. Sec'y of H.H.S., 755 F.2d 495 (6th Cir. 1985), requires reversal under these circumstances.

Wages involved a claimant who clearly required a sit-stand option. In spite of that need, the ALJ found that she could do sedentary work. The Court held that the conclusion that a claimant can do a full range of sedentary work is inconsistent with the need for a sit-stand option. This holding is clear, but inapposite here.

In this case, the Commissioner asked the vocational expert to assume that plaintiff had the physical limitations described by Dr. Kendrick, including the ability to sit for only 45 minutes at a time for up to six hours in a work day and to stand for half an hour at a time for up to two hours in a work day. That does not necessarily translate into a need to be able to change positions from sitting to standing at will. In any event, with those restrictions in mind, the vocational expert identified a reduced range of sedentary jobs which someone who is so restricted can perform. The Commissioner did not find, nor did the vocational expert assume, that plaintiff could do a full range of sedentary work. In fact, Dr. Klein testified that the restrictions on plaintiff's ability to either sit or stand continuously for more than half an hour or 45 minutes reduced the range of available sedentary occupations by about half. (Tr. 300). Clearly, then, this testimony took into account plaintiff's particular restrictions - restrictions which plaintiff does not contend to be unsupported by the evidence of record. The Commissioner was entitled to rely on this specific vocational testimony, just as SSR 83-12 recommends. Had the vocational expert testified that, despite her limitations on sitting and standing, plaintiff could still perform the full range of sedentary work, Wages might suggest that error was committed, but that is not what happened here. Thus, plaintiff's second assignment of error is also without merit.

VII.   Conclusion

Based on the foregoing, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

VIII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge